Blanchard v. The State.

Filed Jan. 19, 1892.

---

No. 442.

## BLANCHARD v. THE STATE.

CRIMINAL LAW.—*Selling Coal by False Weight.—Evidence.*—Upon a prosecution under section 2202, R. S. 1881, for selling and delivering coal mined, without the State, at seventy-two pounds to the bushel instead of eighty pounds, as prescribed by law, the evidence was that the defendant sold eighteen hundred pounds of coal at seventy-two pounds to the bushel, but that the purchaser knew that he was getting but eighteen hundred pounds for twenty-five bushels, and was satisfied with that amount, and was not deceived in the weight of the coal.

*Held*, that a conviction was not sustained.

From the Floyd Circuit Court.

*C. L. Jewett* and *H. E. Jewett*, for appellant.

*A. G. Smith*, Attorney General, and *W. C. Utz*, for the State.

NEW, J.—The appellant was indicted and convicted for a violation of section 2202, R. S. 1881, which reads as follows:

" Whoever knowingly sells and delivers any coal except at the weight and measure prescribed by law, shall be fined not more than one hundred dollars nor less than five dollars."

The indictment charges " that Donald D. Blanchard, on the 10th day of May, 1889, at the county of Floyd, in the State of Indiana, did sell and deliver to Washington D. Keys, for the sum of two dollars and fifty cents, a quantity of mineral coal, mined without the State of Indiana, to wit, twenty-two and one-half bushels of said coal, but which the said Donald D. Blanchard then and there unlawfully sold and delivered for twenty-five bushels, by then and there unlawfully selling and delivering seventy-two pounds of said coal as and for a bushel, he, the said Donald D. Blanchard, then and there well knowing that said coal so sold did not contain twenty-five bushels, and that it did not contain eighty pounds to the bushel as required by law."

Eighty pounds of mineral coal make a standard bushel, whether mined without or within the State.   Acts of 1885, p. 78.

The appellant has assigned as error the overruling by the court below of his motion for a new trial.

The motion for a new trial calls in question the sufficiency of the evidence to sustain the finding.

Washington D. Keys was the only witness.   He testified as follows:

" I am the secretary of the W. C. De Pauw Company, the company operating the glass works.   I know the defendant,

Blanchard v. The State.

Donald Blanchard, and know that he has been engaged in the coal business. I have bought coal of him frequently. I bought coal of him about the 10th day of May, 1889. I can not say how much I bought that time, but I sometimes bought a hundred bushels, and sometimes a load of twenty-five bushels. I bought it at ten or twelve cents a bushel, or whatever the market price was. It was Pittsburgh mineral coal, and was mined without the State of Indiana. I bought it and it was delivered to me in Floyd county, Indiana. A twenty-five bushel load of coal weighed eighteen hundred pounds. I knew eighteen hundred pounds was all I was to get in a load, and I did not expect to get any more. I was not deceived in the weight of the coal, as I knew I was only getting eighteen hundred pounds for twenty-five bushels when I bought it, and I was satisfied with the amount I received."

We think that upon this evidence the conviction of the appellant can not be sustained.

It is shown by the evidence that the coal was mined without the State, and sold by the appellant to Keys within the State at seventy-two pounds to the bushel, instead of eighty pounds, but it clearly appears that the purchaser was not cheated nor defrauded in any way by the sale.

We do not think that the mere naked sale, regardless of the intention of the seller, and regardless of the question whether the purchaser was prejudiced thereby, is enough to warrant a conviction under the statute upon which this prosecution is founded.

Although the function of making indictable certain pernicious acts, irrespective of intent, is one sometimes exercised by the law-making power, and in some cases fully justified, we do not think the statute under consideration belongs to that class. It does not by its terms suggest that knowledge or intention forms no element in the offence. We do not think it can be maintained, from the language employed, or the nature of the act forbidden, that it was the legislative intent that the act itself, irrespective of its mo-

tive, should constitute the crime. See Bishop Statutory Crimes, section 1022, as to the use of the word "knowingly," or the like.

Selling by false weights and measures was, at common law, an indictable offence, and although crimes and misdemeanors are defined, and the punishment therefor fixed by statute in this State, and not otherwise, yet, if the legislature create a crime of common law origin, the courts may, in construing such statute, be guided, to some extent, by common law rules and principles, where, from the language of the statute creating the crime, there is doubt as to its proper construction.

An examination of the authorities upon the subject of false weights and measures will show that at common law a purpose on the part of the seller to cheat the buyer, and wrong to the latter by reason of the use of the false weight or measure, were regarded as being involved in such cases, notwithstanding the fact that the distinguishing feature in the crime, as with all crimes, was that it was a wrong affecting the public at large. 1 Roscoe Criminal Evidence, 530, etc.; 2 Russell Crimes, 604, etc.; 2 East Crown Law, 820, 860.

Wherever we find the subject of false weights and measures discussed by common-law writers, it is under the head of "Cheats and Frauds."

A "cheat" at the common law is defined in 2 Bishop Criminal Law, section 143, to be a fraud accomplished through the instrumentality of some false symbol, or token, of a nature against which common prudence can not guard, to the injury of one in some pecuniary interest.

If Keys, the purchaser of the coal, knew that eighteen hundred pounds was all he was to get in a twenty-five bushel load, was not deceived in the weight, and was satisfied with the amount he received, we do not see how it can be said that he was cheated, or defrauded, by the appellant. Nor does the evidence fairly tend to show that it was the purpose of the appellant to wrong him.

We can not believe that it was the design of the law to prohibit parties from fixing by contract, in good faith, the price of coal, a product in no way menacing to the health and safety of the people, which one had to sell, and which the other wanted to purchase. See *People* v. *Gillson*, 109 N. Y. 389.

The judgment is reversed, and the cause remanded for a new trial.

